UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
In re: Genie Investments NV Inc., Debtor.
Case No. 3:24-bk-00496-BAJ
Chapter 7

FILED INTAKE USBC
JUL 6 '26 PM2:39

**VERIFIED MOTION FOR RECUSAL AND DISQUALIFICATION OF JUDGE JASON A. BURGESS PURSUANT TO 28 U.S.C. § 455(a)**

John Michael Cohan, an equity shareholder of the debtor, party in interest, and a protected person, hereby moves for the recusal and disqualification of the Honorable Jason A. Burgess from all further proceedings in this case and all related adversary proceedings. In support thereof, Mr. Cohan states as follows:

I. INTRODUCTION

1. COMES NOW, John Michael Cohan, and moves for the recusal and disqualification of the Honorable Jason A. Burgess from all further proceedings in this case and all related adversary proceedings. This motion is necessitated by the Court's continued failure to rule on the undersigned's Motion to Modify or Rescind Order to Show Cause (Doc. 347) — which is the latest in a pattern of judicial conduct that would cause a reasonable observer to question the Court's impartiality. In this case, the U.S. government has given a known abuser — who did not have standing — a voice, and has restricted the voice of the victim, an equity shareholder of the debtor, party of interest and a protected person. That is not justice. That is not neutrality. That is the system protecting itself.

2. A judge cannot preside over a case where he has systematically suppressed a litigant's access to the courts, retaliated against a litigant for reporting a crime, selectively enforced procedural

rules, and presided over a docket from which evidence of a verified crime was removed without any motion, hearing, or court order. Recusal is required.

## II. LEGAL STANDARD

### A. Statutory Standard: 28 U.S.C. § 455(a)

3. 28 U.S.C. § 455(a) provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

4. The standard under § 455(a) is objective: recusal is required when a reasonable person, knowing all the facts, would question the judge's impartiality. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988); *Liteky v. United States*, 510 U.S. 540, 548 (1994); *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000); *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1263 (11th Cir. 2009).

5. The statute is designed to protect the appearance of justice—not merely actual bias. See *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988); *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000).

### B. The Objective Reasonableness Standard

6. A judge is required to recuse when his actions "display a deep-seated antagonism" or otherwise make fair judgment impossible. *Liteky v. United States*, 510 U.S. 540, 555 (1994).

7. The Due Process Clause "entitles a person to an impartial and disinterested tribunal." *In re Murchison*, 349 U.S. 133, 136 (1955); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009).

8. "Under § 455, the standard is whether an objective, fully informed lay observer would entertain significant doubt about the judge's impartiality." *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000).

C. Cumulative Effect of a Pattern of Conduct

9. Recusal is particularly appropriate when a judge's rulings, taken together, demonstrate a pattern of conduct that would lead a reasonable observer to question the judge's impartiality. *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821-22 (1986); *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000); *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1263 (11th Cir. 2009).

D. The Adverse Ruling vs. Deep-Seated Antagonism Distinction

10. The Supreme Court has drawn a distinction between adverse rulings (which are not grounds for recusal) and a pattern of conduct that displays "deep-seated antagonism." *Liteky v. United States*, 510 U.S. 540, 555 (1994).

11. Recusal may be warranted when the judge's actions "display a deep-seated antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994).

E. The Appearance of Justice

12. As the Supreme Court has held, "justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14 (1954).

## III. STATEMENT OF FACTS

### A. The Pending, Unresolved Order to Show Cause (Doc. 347)

13. On March 27, 2025, the Court entered an Order to Show Cause (Doc. 347) that restricted the undersigned's right to file pro se pleadings.

14. On June 24, 2025, the Court "held" a hearing on the OSC. The Court did not find that the undersigned had violated any rule. The Court continued the hearing "until further order of the Court." (Doc. 378).

15. As of the date of this motion, no final ruling has ever been entered on the OSC. No finding has ever been made that the undersigned violated any rule.

16. Despite the lack of a final ruling, the Court has repeatedly applied the OSC to strike the undersigned's meritorious, verified filings.

17. At the June 24, 2025 hearing, the Court stated that it had "read through every single document" filed in this case. The original administrative rationale for the OSC—that the volume of filings made it "impossible to see what was really important"—has been mooted by the Court's own statement. Yet the Court continues to strike filings based on the unresolved OSC.

18. The Undersigned's Motion to Modify or Rescind the OSC: The undersigned filed a motion to modify or rescind the OSC, arguing that it was interlocutory, unresolved, and being used to suppress meritorious filings. The Court has not addressed the motion.

19. This ruling is the latest act in a pattern of judicial suppression. A reasonable observer would conclude that the Court is not interested in hearing the undersigned's arguments, regardless of their merit.

B. The Retaliatory Bar Order (Doc. 471) — Appearance of Retaliation

20. On November 4, 2025, the undersigned filed a Notice of Missing Exhibit (Doc. 470) documenting that the official docket had been altered and that a police report had been removed from the docket.

21. The police report documented a crime that occurred during the April 17, 2024 §341 meeting. The report described conduct serious enough that a Florida state court judge signed a criminal warrant (Doc. 499).

22. On November 5, 2025 — the very next day — the Court entered a bar order (Docs. 471, 476) that:

- (a) Cancelled the undersigned's scheduled hearing; and

- (b) Extinguished the undersigned's personal legal malpractice claims against Warren Law Group and Scott Oh whom were accessories to a prime-bank fraud.

23. The undersigned was never heard on the bar order. No hearing was held. No notice was given. No opportunity to be heard.

24. A reasonable observer would conclude that the Court retaliated against the undersigned for filing a police report and exposing docket tampering that implicated the United States Trustee and this Court's proceedings. The timing—"the very next day"—speaks for itself.

C. The Pattern of Striking Meritorious Filings Without Addressing the Merits

25. The Court has struck the undersigned's filings repeatedly, including but not limited to:

- Doc. 442 (striking Notice of Appeal);
- Doc. 447 (striking Motion for Reconsideration);
- Doc. 457 (striking Objection to Trustee's Motion to Compromise);
- Doc. 458 (striking Motion to Correct the Record);
- Doc. 506 (striking Emergency Motion to Vacate Conversion Order for Fraud on the Court);
- Doc. 530 (striking Motion to Disqualify U.S. Trustee);
- Doc. 531 (striking Motion to Disqualify Trustee's Counsel);
- Doc. 532 (striking Motion for Removal of Trustee);
- Doc. 536 (striking Motion for Judicial Notice);
- Doc. 601 (striking Motion for Reconsideration of Claim 4);
- Doc. 602 (striking Objection to Amended Claim 4);
- Doc. 603 (striking Objection to Claim 5).

26. None of these Orders addressed the substance of the undersigned's filings. Not one. The undersigned's verified evidentiary submissions—including the police report, the audio waveform analysis showing spoliation, and the former FINRA attorney's declaration—have never been meaningfully addressed by this Court.

27. A pattern of striking meritorious filings without ruling on the merits is not judicial administration; it is judicial suppression.

D. Systemic Docket Tampering, Concealment of a Verified Crime, and Attempted Ex Parte Intimidation

28. Docket Tampering Proven by Trustee's Counsel: On fNovember 4, 2025, the undersigned filed a Notice of Missing Exhibit (Doc. 470) documenting that the official docket had been altered. The undersigned had filed a police report (originally filed as an exhibit to Doc. 406) and audio waveform analysis. These exhibits were removed from the docket post-filing—without any motion, hearing, or court order.

29. The undersigned obtained from the Trustee's counsel the original, unaltered versions of Doc. 406 and Doc. 470. A side-by-side comparison confirms the post-filing removal of at least five (5) material exhibits (Doc. 470-1), including:

- Exhibit I: The Jacksonville Sheriff's Office Incident Report documenting probable cause for a violation of a court order during the §341 meeting;

- Exhibit II: Audio Waveform analysis of the spliced and altered official audio recording of the §341 meeting;

- Exhibit III: Evidence that the U.S. Trustee used the federal government shutdown to avoid service of process;

- Exhibit IV: A sworn affidavit from an eyewitness confirming the U.S. Trustee knowingly allowed a restrained party to participate in the §341 meeting;

- Exhibit V: A declaration from a 12-year former FINRA attorney stating the U.S. Trustee "invented confirmations of fraud."

30. Concealment of a Verified Crime: The police report—which was removed from the docket—formed the basis for a finding of probable cause that resulted in a signed arrest warrant from the Florida State Attorney's Office. The removal of this evidence from the docket constitutes the concealment of a verified crime.

31. The official docket (Doc. 406) clearly shows the sequence 406-1, 406-2, 406-4, 406-5, 406-6, proving the logical sequence was broken to specifically target and remove the law enforcement report (406-3). This demonstrates deliberate docket manipulation.

32. Attempted Ex Parte Intimidation: On November 5, 2025—the very day after the undersigned filed the Notice of Missing Exhibit (Doc. 470) documenting docket tampering and the same day the Court entered the retaliatory bar order (Docs. 471, 476)—Court staff called the undersigned and left a voicemail stating it was "imperative" he call back for an off-the-record discussion. The undersigned declined.

33. This attempted ex parte communication, combined with the timing, creates an appearance of intimidation and retaliation. Such ex parte communications are strictly prohibited. See Code of Conduct for U.S. Judges, Canon 3(A)(4) ("A judge should neither initiate nor consider ex parte communications on the merits of a pending or impending matter."); *In re Kensington Int'l Ltd.*, 368 F.3d 289, 313 (3d Cir. 2004); *Liteky v. United States*, 510 U.S. 540, 555 (1994); *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000).

34. This post-filing alteration of the official record without judicial authorization violates the Court's ministerial duty to maintain a complete and unaltered record under 28 U.S.C. § 753 and

constitutes a fundamental breach of due process. See *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1200 (9th Cir. 1999); *In re F.A. Potts & Co., Inc.*, 807 F.2d 1121, 1125 (3d Cir. 1986). If the Court concludes recusal was required earlier, vacatur of affected orders is governed by *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988).

35. The knowing concealment of evidence material to the proceedings, particularly evidence of criminal conduct, is a grave abuse of the judicial process that undermines the integrity of the entire case. See *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *United States v. Bagley*, 473 U.S. 667, 678 (1985).

36. A reasonable observer would conclude that the Court's docket was tampered with to conceal evidence of a crime and that the Court attempted to intimidate the undersigned into silence. The timing—November 4 = notice of missing exhibit; November 5 = ex parte call + hearing canceled + bar order—is undeniable.

E. The Spliced Audio and Spoliation of Evidence

37. The undersigned has filed evidence that the April 17, 2024 §341 meeting audio was tampered with—specifically, that a flatline in the audio indicates spoliation of evidence (Doc. 501, Ex. 1).

38. This Court has never addressed this allegation. The Court has never ordered the United States Trustee to produce the original audio. The Court has never held an evidentiary hearing. The Court has instead struck the filing containing the evidence.

39. A reasonable observer would conclude that the Court is actively avoiding the spoliation issue because it implicates the United States Trustee—an officer of this Court—in evidence tampering.

F. The Walker Declaration — The UST Fabricated Fraud Allegations

40. The undersigned previously submitted the Declaration of Adam Walker, a 12-year former FINRA enforcement attorney who routinely investigated fraud during his tenure at FINRA. (Bankr. Doc. 501, Ex. 5). A true and correct copy of the Walker Declaration is the sole exhibit to Doc. 1 in 3:25-cv-00164.

41. The undersigned also submitted the Draft Opposition prepared by Walker, which provides a detailed legal analysis of the Examiner's Report and concludes that the United States Trustee's allegation of 'direct evidence' of fraud was itself 'a fraud, fabricated by the UST and unsupported by any evidence in the [Examiner] Report or elsewhere in the record of this case.'

42. This Court has never addressed the Draft Opposition. The Court has instead struck the filing containing the Walker file.

G. Selective Enforcement of Local Rule 1074-1 — Disparate Treatment

43. The Court has applied Local Rule 1074-1 against the undersigned to strike his filings, holding that corporations may only appear through counsel.

44. Yet Belle Maison Realty, LLC—a limited liability company—has appeared pro se by and through its principal in this case. The Court has not struck its filings. The Trustee instead entered into an agreed order with Belle Maison (Doc. 583).

45. This disparate treatment violates the undersigned's rights under the Fifth Amendment. A reasonable observer would conclude that the Court is selectively enforcing the rules to disadvantage the undersigned.

H. The Contempt Order (Adv. Pro. Doc. 107) — Imposing Sanctions Without Notice or Jurisdiction

46. On August 27, 2025, the Court entered a contempt order (Adv. Pro. 3:25-ap-00011, Doc. 107) that purports to prohibit "Defendants and the Former Owners"—including the undersigned—from filing any pleadings.

47. The undersigned was not a named defendant in any adversary proceeding. The undersigned was never served. The Court had no personal jurisdiction over the undersigned.

48. The contempt finding was based on the failure of corporate Defendants to respond to discovery. The undersigned could not compel those entities to respond.

49. Despite the lack of jurisdiction, the contempt order prohibits the undersigned from filing any pleadings.

50. The undersigned was never given notice that his personal filing rights were at risk. The undersigned was never given an opportunity to be heard.

51. A court cannot punish a non-party for the acts of a party absent a valid basis for jurisdiction and notice. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969); *Taylor v. Sturgell*, 553 U.S. 880, 884-85 (2008).

52. A reasonable observer would conclude that the Court is imposing sanctions on the undersigned without due process.

I. The Court's Preemptive Ruling Insulating the Trustee from Scrutiny

53. At the June 24, 2025 hearing, the undersigned asked the Chapter 7 Trustee under oath: "Where's the fraud?" (Doc. 389 at 65:21-23).

54. Before the Trustee could answer, the Court interjected and ruled from the bench, invoking the Best Evidence Rule to preclude any further inquiry (Doc. 389 at 65:24-66:2).

55. The question—"Where's the fraud?"—was never answered.

56. A reasonable observer would conclude that the Court preemptively shielded the Trustees from having to substantiate the very allegations that formed the basis of the proceedings.

J. The Trustee's Admissions and the Court's Refusal to Investigate

57. The Trustee admitted under oath that he filed fraudulent transfer claims without reviewing bank records, relying on third parties instead (Doc. 389 at 39:19-25, 40:4-8, 41:19-23, 58:14-17).

58. The Trustee admitted he never independently requested to review the underlying contract before filing the adversary complaint (Doc. 389 at 41:1-5).

59. The Trustee admitted to citing the "Bernie Madoff case" against the undersigned without any factual finding of fraud (Doc. 389 at 46:14-20). The Debtor provided services to its borrowers by making loans and not every borrower was satisfied. Madoff reported false profits to investors for decades while never making an investment. The Debtor informed its direct borrowers that the Debtor used third parties for capital, expressly informed borrowers in writing whether their payment was either refundable or non-refundable, and included a force majeure provision in the contract for any capital provider's failure. Madoff created fake statements reporting a fictitious 1% gain on the investor's capital per month. Through arbitrations and lawsuits, Debtor discovered and reported a ponzi scheme and Scott Oh through counsel to the proper authorities and filed bankruptcy to maximize creditor return of capital while reporting loans on the Debtor's schedules (A/B) made to borrowers and its affiliates. (Bankr. Doc. 503). Madoff *was* the ponzi scheme who didn't register with the SEC to avoid public reporting obligations. The undersigned

was investigated by various authorities; no charges have been filed. Madoff went to prison for 150 years. A very stark contrast. Case No. 3:26-ap-00063-BAJ is dead on arrival. The Trustees, Stringer through counsel, any of the other creditors conspiring to make baseless accusations (Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County (No.: 2024-008427-CA-01), Florida entered default judgments against Kristen Stegent (Rolling by the Dozen LLC) and Kipp Nash a/k/a Kim Nash (A-Complete Home Inspection LLC) for defamation, civil conspiracy, extortion, and other tortious conduct substantially similar, if not identical, to Stringer's conduct), and the bankruptcy courts cannot manufacture facts or narratives that do not exist to protect their own.

## IV. ARGUMENT

### A. Recusal Is Required When a Judge's Impartiality Might Reasonably Be Questioned

62. The undersigned does not allege actual bias. The undersigned alleges that a reasonable observer, knowing all the facts, would question this Court's impartiality. That is the standard under § 455(a).

63. A reasonable observer would ask:

- Why did the Court cancel the undersigned's hearing and bar his personal claims the day after he filed a notice documenting docket tampering and a police report? If true, does that rise to the level of retaliating against a witness?

- Why did Court staff call the undersigned on the same day and ask for an off-the-record discussion?

- Why was the police report—which led to a signed arrest warrant—removed from the docket without any motion, hearing, or court order? If true, was it to protect the United States Trustee from scrutiny?

- Why does the Court continue to strike meritorious filings based on an unresolved Order to Show Cause?

- Why has the Court never addressed the spoliation of evidence allegation?

- Why does the Court and the Trustee selectively enforce Local Rule 1074-1 against the undersigned but not against other corporations like Belle Maison?

- Why, after stating on the record that it had read every document, does the Court still use the OSC to suppress filings?

- Why did the Court preemptively shield the Trustee from answering "Where's the fraud?"

- Why did the Court impose a contempt sanction on a non-party without notice, without a hearing, and without personal jurisdiction?

- Why did the Court not address the undersigned's motion to modify or rescind the OSC and its merits promptly?

B. The Cumulative Effect of the Court's Conduct Requires Recusal

64. The Eleventh Circuit has recognized that recusal may be appropriate when a judge's actions, "taken together," demonstrate a pattern of conduct that would lead a reasonable observer to question the judge's impartiality. *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000); *In re Evergreen Sec.*, Ltd., 570 F.3d 1257, 1263 (11th Cir. 2009).

65. The cumulative effect of the Court's conduct—the unresolved OSC, the retaliatory bar order, the repeated striking of meritorious filings, the docket tampering to conceal evidence of a crime, the attempted ex parte intimidation, the failure to address spoliation, the selective enforcement of local rules, the contempt order without jurisdiction, the preemptive shielding of the Trustee, and not promptly addressing the undersigned's motion to modify or rescind the OSC—creates an unmistakable appearance of partiality.

66. As the Supreme Court has held, "justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14 (1954).

C. The Court's Conduct Is More Than Adverse Rulings — It Is a Pattern of Suppression

67. The Supreme Court has drawn a distinction between adverse rulings (which are not grounds for recusal) and a pattern of conduct that displays "deep-seated antagonism." *Liteky v. United States*, 510 U.S. 540, 555 (1994).

68. This case falls on the "deep-seated antagonism" side of the line. The Court is not merely ruling against the undersigned. The Court is systematically preventing him from being heard at all—striking his filings, canceling his hearings, extinguishing his claims without due process, and preemptively shielding the Trustee from scrutiny.

69. Moreover, the Court's docket was manipulated with to conceal evidence of a verified crime. The removal of the police report and audio waveform analysis—without any motion, hearing, or court order—is not judicial administration. It is a cover-up. A reasonable observer would conclude that the Court is actively concealing evidence that implicates the United States Trustee and these proceedings.

70. A judge who systematically suppresses a litigant's access to the courts is not acting as a neutral arbiter. A judge who cancels a hearing and bars a litigant's claims the day after the litigant files a police report is not acting impartially. A judge who preemptively shields a fiduciary from answering "Where's the fraud?" is not acting as a neutral arbiter.

71. That appearance is unavoidable. The appearance of impropriety is compounded by the fact that the Trustee's counsel, Akerman LLP, has now employed Judge Burgess's former law clerk, Mr. Taylor J. King, who served as Judge Burgess's Term Law Clerk from May 2022 through May 2026. Per the Trustee's counsel's notice (Doc. 613), the judge's former clerk now works for Trustee's counsel and has attempted to self-cure a potential conflict of interest. The undersigned does not question Mr. King's integrity or professionalism at this time. He is not at fault for accepting a job. The issue is the appearance created by the structure of the representation — a structure chosen by the Trustee and his counsel, not by Mr. King. But the undersigned does not know the extent of Mr. King's knowledge of private information regarding this case. That uncertainty is a problem regardless of any "on-the-record" activity. The undersigned fears what may occur or has occurred "off-the-record". The appearance of impropriety is unavoidable.

72. On at least one (1) occasion, the Court struck the undersigned's motion (Bankr. Doc. 501) literally moments before a scheduled hearing. The undersigned appeared prepared to argue the motion, only to learn it had been struck — effectively precluding the undersigned from being heard on the issue. This is not judicial administration. This is judicial suppression — timed to prevent the undersigned from being heard regarding very serious allegations that are grounded in physical evidence — with crimes/misconduct flying around in every direction all aimed towards the undersigned while the undersigned's filings and objections are arbitrarily stricken by this Court; violation of restraining order, spoliation of evidence, fabrication of evidence, retaliation

against a witness, intimidation, extortion, civil conspiracy, legal malpractice, and a prime-bank fraud — to name a few while this Court refuses to address meritable, non-frivolous fraud-on-the court motion being heard from multiple parties.

73. Recusal is required.

V. REQUEST FOR RELIEF

74. WHEREFORE, Mr. Cohan respectfully requests that this Court:

A. Recuse and disqualify itself from all further proceedings in this case and all related adversary proceedings, including but not limited to:

- Adversary Proceeding No. 3:25-ap-00011-BAJ;
- Adversary Proceeding No. 3:26-ap-00063-BAJ;
- Any other adversary proceeding related to this case;

B. Assign this case to a different bankruptcy judge in the Middle District of Florida;

C. Vacate all orders entered by the recused judge that were issued after the point at which recusal was required, including but not limited to:

- Doc. 471 (Bar Order);
- Docs. 601, 602, 603 (Orders Striking Filings);
- Any other orders;

D. Stay all proceedings pending reassignment to a different judge;

of impropriety, including reassignment of related matters to a different judge or referral to the appropriate judicial authority, based on the pattern of judicial conduct documented herein, including retaliation against a witness, selective enforcement, and the recently added appearance of impropriety created by the employment of the judge's former law clerk by the Trustee's counsel; and

F. Grant such other and further relief as the Court deems just and proper.

VI. VERIFICATION

75. Under penalty of perjury, I declare that I have read the foregoing motion, and the facts alleged therein are true and correct to the best of my knowledge, information, and belief.

**NO EXHIBITS ARE ATTACHED TO THIS MOTION.** The undersigned relies solely on the official docket of this Court, which contains all documents referenced herein. The relevant docket entries are on file with the Court and incorporated herein by reference. See, e.g., Doc. 347 (Order to Show Cause); Doc. 378 (Order Continuing Hearing); Doc. 406, Doc. 470 (Notice of Missing Exhibit), Doc. 471 (Bar Order), Docs. 474, 476, 477, 490; Docs. 442, 447, 457, 458, 506, 530, 531, 532, 536, 601, 602, 603 (Striking Orders); Doc. 501, Ex. 1 (Audio Flatline); Doc. 501, Ex. 5 (Walker Declaration); Doc. 583 (Belle Maison Agreed Order); Adv. Pro. 3:25-ap-00011, Doc. 107 (Contempt Order); Doc. 389 (Hearing Transcript); Doc. 590 (Trustee's Non-Response); Doc. 587 (Notice of Inconsistent Accounting); Doc. 499 (State Attorney Correspondence); and Doc. 555 (Notice to Correct Record).

The undersigned incorporates by reference the Notice of Systemic Docket Tampering, Ex Parte Communication, and Compromise of Judicial Integrity (Bankr. Doc. 477, filed on or around

November 11, 2025), and Bankr. Docs. 406, 470, 474, 490 which are on file with the Court and contains the following including but not limited to exhibits already in the record: [1] Side-by-side comparison of originals vs. current docket, [2] Screenshot and transcript of voicemail from Court staff (November 5, 2025), [3] Trustee's email confirming receipt of the originals from PACER

The undersigned incorporates by reference the Notice of Retaliatory Action and Procedural Irregularity (Doc. 476, filed on or around November 12, 2025), which contains the following exhibits already in the record:

*Exhibit I: Jacksonville Sheriff's Office Incident Report (police report)*

*Exhibit II: Audio Waveform Analysis (spoliation evidence)*

*Exhibit III: Process Server Notes (UST avoided service using government shutdown)*

*Exhibit IV: David Hughes Affidavit (eyewitness confirmation)*

*Exhibit V: Walker Declaration (former FINRA attorney)*

*Exhibit VI: D.D.C. Civil Docket (Cohan v. Bomkamp)*

*Exhibit VII: Plaintiff's Notice of Non-Opposition (UST ethics violation)*

*Exhibit AA: Copy of Doc. 470 (Notice of Missing Exhibit)*

*Exhibit BB: Doc. 471 (Order Granting Motion to Approve Compromise)*

*Exhibit CC: Order Denying IFP (Doc. 464)*

*Exhibit DD: Correspondence evidencing timing of filings*

*Exhibit EE: Voicemail from Court staff (November 5, 2025)*

*Exhibit FF: PACER Docket Screenshots (sequence 406-1, 406-2, 406-4, 406-5, 406-6)*

***The undersigned respectfully requests that the Court take judicial notice of the undersigned's filings in this case and the undersigned's filings in any pending adversary proceeding, which contains all documents referenced herein and more while rendering its decision.***

Dated: 07-06-2026

Respectfully submitted in good faith,

John Michael Cohan, without prejudice, without recourse, UCC 1-308, 1-103
iustusprocessus@outlook.com

Certificate of Service

I hereby certify that all interested parties have been duly served a copy of the following documents by the CM/ECF system, U.S. mail and/or email.